JASPER E. JONES, Judge.
Defendant, Bernard McMenamy Contractors, Inc., appeals a judgment against it in the amount of $110,000 in favor of plaintiff, Daniel L. Gibbs, for dirt allegedly placed in a levee by Gibbs pursuant to a contract with appellant. The judgment which was pursuant to a jury verdict also rejects appellant’s reconventional demand. We amend the judgment and reject plaintiff’s demands, and as amended affirm.
In July of 1974 appellant was awarded a contract by the Corps of Engineers to enlarge a levee located along the east side of the Ouachita River south of Monroe, La. In August of 1976, after appellant had put in place on the south end of the levee project 66,439 cubic yards of dirt, it subcontracted the addition to the levee on the south end of the levee enlargement project to plaintiff. The subcontract was a unit price contract and provided that appellant would pay to plaintiff $1.35 per cubic yard for each yard of dirt placed in the levee structure in accordance with the plans and specifications of the Corps as contained in the contract between appellant and the Corps. The contract between the Corps and appellant was made a part of the subcontract by reference. The subcontract provided that plaintiff would make monthly draws based upon the work he completed .and for which appellant had collected from the Corps. The Corps contract provided that the monthly progress payments would be made by the Corps only for the dirt put in place in the levee structure in accordance with the plans and specifications as established by a cross-section survey of the levee and computations based upon the survey; and it was upon this basis by the terms of the subcontract and the Corps contract that plaintiff should have received his monthly progress payments. The Corps and appellant waived the method required by the contracts for establishing the amount of monthly progress payments to be paid to plaintiff for the months of August, September and October. Plaintiff was paid for cubic yards as determined by a truck-load count in the month of August. He was paid for the number of cubic yards as determined by a survey of the dirt removed from the bar-pit from which he was excavating for the month of September; and he was paid for cubic yards of dirt based upon a truck-load count for the month of October.
Following the month of October, the Corps refused to make further payments except for dirt established to have been properly placed into the levee structure by a cross-section survey of the structure. A cross-section survey of the structure completed December 15, 1976 established that plaintiff had put in place upon the levee in accordance with the plans 132,033 cubic yards of dirt. The total of cubic yards for which plaintiff had been paid in the months *872 of August, September and October was 150,886 cubic yards. He had therefore been overpaid to the extent of 18,853 cubic yards, or in an amount of $25,451.55. Because the survey established plaintiff’s overpayment, appellant refused to pay any progress payments for the months of November and December, and plaintiff moved his equipment from the job and refused to continue with the subcontract.
Plaintiff instituted this suit alleging that he had put into place upon the levee during the months of November and December 81,619 cubic yards of dirt for which he had not been paid. He alleged that the yardage was determined based upon a truck-load count calculated at 10.7 cubic yards per truck. He alleged that there was an agreement between him and appellant for him to receive $1.35 per cubic yard placed on the levee with the yardage so placed to be determined by a truck-load count calculated at 10.7 cubic yards per truck. The amount of plaintiff’s suit calculated on the alleged yardage put into place on the levee times $1.35 per cubic yard was $110,185, and the jury awarded him $110,000.
The subcontract provided that appellant was to pay on behalf of plaintiff, plaintiff’s monthly payroll, taxes and insurance, and withhold the amount so paid from plaintiff’s monthly progress payments. Appellant paid these items on behalf of plaintiff for the months of November and December in an amount totaling $24,339.18, and because plaintiff received no progress payments for these months appellant was not reimbursed for these payments.
Appellant initially reconvened for the amount of the overpayment as established by the December 15th survey and the amount of the payroll, taxes, and insurance advanced for November and December for which it was not reimbursed, and for substantial other damages allegedly sustained by virtue of plaintiff’s failure to complete the contract. In brief before this court appellant has now reduced its claims asserted in the reconventional demand to the sum of $25,451.55 allegedly overpaid plaintiff for dirt in place, and for the sum of $24,339.18 which was advanced for plaintiff’s November and December payroll, taxes and insurance expenses.
The issues are (1) was there substantial evidence presented to the jury to support the judgment in favor of plaintiff? and (2) should the jury have made an award to appellant on the reconventional demand?
Plaintiff’s contract required him to excavate from a bar-pit the material to be used in the levee enlargement and to haul it to the levee and then place it into the levee structure in the manner required by the plans of the Corps. He was only entitled under the contract to be paid $1.35 for each cubic yard of dirt put in its proper place upon the levee. The dirt which was removed from the bar-pit contained about 25% moisture after its excavation and had to be placed alongside the levee to dry before it could be incorporated into the levee structure. It therefore is apparent that the cubic yards loaded upon the trucks and moved to the levee site are probably 25% less than the cubic yards of dirt actually incorporated in the levee structure.
Though plaintiff alleged in his petition that there was an agreement that he was to be paid $1.35 per cubic yard based upon a truck-load count calculated at 10.7 cubic yards per truck, he offered no evidence to support these allegations. The contract between appellant and the Corps and the subcontract between appellant and plaintiff both conditioned payment to the cubic yards of dirt properly put in place on the levee structure. Plaintiff admitted at trial that the final payment under his subcontract was to be made only upon the yards of dirt put in place in the levee structure.
The evidence establishes that the most reliable way to determine the number of yards of dirt located in a levee structure is by cross-section survey of the levee and calculation based upon the results of the survey. The prime contract which was made a part of the subcontract by reference required that the yards of dirt incorporated in the levee in the enlargement project be determined by cross-section survey. Plaintiff never made a cross-section survey for *873 the purpose of determining the amount of dirt properly put in place by him in the levee structure. He offered no evidence to the jury of the amount of dirt placed by him in the levee as established by a cross-section survey of the levee structure. All of the evidence offered by plaintiff to establish his claim related to a truck-load count of material hauled from the bar-pit to the site of the levee during the months of November and December, 1976. There was therefore no evidence in the record to support the jury’s verdict in favor of plaintiff in the amount of $110,000 paying him for 81,619 cubic yards of dirt allegedly placed in the levee structure in the months of November and December, other than the truck-load count evidence.
Plaintiff does not deny that he had been paid for 150,886 cubic yards of dirt for the months of August, September and October. Appellant’s evidence establishes that in 1972 the Corps preparatory to proceeding with the enlargement project subject to this litigation had prepared a survey of the levee structure to be enlarged. Appellant, prior to executing the contract with plaintiff in August, 1976, performed a cross-section survey upon the levee to find out how many yards of dirt it had placed upon the south end of the levee in partial performance of its contract with the Corps, and this survey reflected appellant had put upon this point of the structure 66,439 cubic yards. Appellant’s survey completed December 15th reflected that 198,472 total yards had been properly placed upon the south end of the project covered by plaintiff’s subcontract. By deducting 66,439 cubic yards which appellant had placed before plaintiff commenced the execution of his subcontract, this survey established that plaintiff had placed 132,033 cubic yards of dirt, and under these circumstances, by the terms of the contract he had been overpaid for 18,853 cubic yards, or the sum of $25,-451.55.
It is significant that appellant’s survey completed December 15th reflected that there existed 47,974 cubic yards of dirt which had been hauled by plaintiff to the levee site which were out of place and for that reason appellant was entitled to no payment for it under the terms of the contract.
While the record is not totally clear, it appears that some of the out of place dirt was lying adjacent to the levee structure as it was involved in the drying process and that substantial amounts of the out of place dirt was incorporated in the levee structure in a manner contrary to the plans. This out of place dirt incorporated in the structure reflected an overbuilding of the levee.
Plaintiff could have returned to the job and properly incorporated all the out of place dirt into the structure and been entitled to payment therefor, but this he refused to do. Appellant completed the work which had been subcontracted to plaintiff and used the out of place dirt brought to the levee site by plaintiff in completion of the levee project.
The evidence establishes that in addition to the 47,974 cubic yards of out of place dirt disclosed by appellant’s survey, that plaintiff hauled 15,150 cubic yards of dirt to the levee site during the period between the completion of the survey on December 15th and the time plaintiff ceased working on December 31st. Reducing the amount of this yardage hauled to the levee site by 25% for its moisture content we find that in the last two weeks of December plaintiff, in a continuing effort to fulfill his contract, hauled a net total of 11,363 cubic yards of dirt to the levee site. We also note there is some small portion of dirt that may have been put in place in the levee by plaintiff during this time, but we are unable to determine from the record what the amount would have been.
We conclude that following plaintiff’s cessation of efforts to perform his contract, that there remained at the levee site dirt excavated and hauled by plaintiff, but not put in place by him, totaling 59,337 cubic yards. Appellant used this dirt but made no effort at trial to establish how much it cost to properly incorporate this dirt into the levee structure. Plaintiff testified that the 47,974 yardage shown out of place by *874 appellant’s survey could be incorporated in its proper location in the levee structure for $6,000. A careful analysis of his testimony reveals, however, that he contemplated doing this work in 12-days and estimated the use of three bulldozers and one grader at a charge of $90 per hour working a 10-hour day, or a daily charge of $900, which would result in a 12-day charge of $10,800, which we conclude is the correct amount of plaintiff’s estimate to perform this work, but we find he could not have done the work in 12-days.
Appellant incorporated 59,337 cubic yards of dirt hauled by plaintiff into the structure, and this is only slightly less than V2 of the 132,033 cubic yards that plaintiff had properly incorporated into the structure during the 4-month period between August 14 and December 15, 1976. Because plaintiff’s dirt which appellant put into the structure was close at hand and some of it was incorporated in the structure, though at the wrong place, it could have been moved and put in the right place much faster than it could have been initially worked into the levee. We conclude that a fair estimate of the number of days required to place plaintiff’s dirt into the levee would be approximately 34-days, and based upon plaintiff’s claim of $900 per day cost we conclude that it would cost appellant approximately $30,600 to place the dirt hauled by plaintiff into the levee in its proper place.
If plaintiff had properly incorporated within the levee structure the 59,337 cubic yards of dirt hauled by him to the levee site, he would have been entitled to receive at the rate of $1.35 per cubic yard the sum of $80,104.95. We conclude that it cost appellant approximately $30,600 (or approximately 34-days work time based upon a cost of $900 per day as testified to by plaintiff) to incorporate plaintiff’s dirt into the levee site. This would therefore leave plaintiff entitled to $49,504.95 for the work performed by him in excavating the fill and hauling it to the levee site, even though he did not complete his contract. Defendant’s reconventional demand for the cost of 18,-853 cubic yards of dirt paid to plaintiff but not put into place as reflected by the December 15th survey, and the advance for plaintiff’s November and December payroll, insurance and taxes, is a total of $49,700. Though there is some small difference in the amount of $49,504.95 which we conclude plaintiff should be entitled for the dirt hauled by him but left out of place, and defendant’s established reconventional demand of $49,790, because of the estimations we have been forced to use to arrive at the amount of plaintiff’s claim, we find the respective claims of the litigants offset each other.
The jury award was obviously based upon a truck-load count for the reason that it is almost the exact amount sought in the petition which was calculated upon a truck-load count. Plaintiff is entitled to no sum under the terms of the contract with appellant calculated on this basis. The evidence establishes that plaintiff was paid by appellant for all dirt proven to have been properly put in place by him as required by the contract. We conclude that the jury verdict in favor of plaintiff in the amount of $110,000 is not supported by the evidence[1] and is manifestly erroneous and for that reason the judgment based upon it is reversed and set aside and plaintiff’s demands rejected.
For the reasons assigned the judgment in favor of plaintiff is REVERSED and his demands are rejected, the portion of the judgment rejecting appellant’s reconven-tional demands is affirmed and we assess all cost below and on appeal equally between the litigants.

. The trial judge denied appellant’s motion for new trial but in his written reasons for so doing made the following comment with regard to the evidence: “In our opinion the verdict in this case cannot reasonably be supported by the evidence.”